JOSEPH T. MCNALLY
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
CAROLYN S. SMALL (Cal. Bar No. 304938)
Assistant United States Attorneys
BENJAMIN S. KINGSLEY (Cal. Bar No. 314192)
Special Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-1259/2041
     Facsimile: (213) 894-0141
     E-mail:   alexander.schwab@usdoj.gov
               carolyn.small@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

```
                    FILED
            CLERK, U.S. DISTRICT COURT

            3/15/2023

           CENTRAL DISTRICT OF CALIFORNIA
           BY: ____jb____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR  2:23-cr-00115-JLS |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT CARRIE L. TOLSTEDT |
| v. | |
| CARRIE L. TOLSTEDT, | |
| Defendant. | |

1.   This constitutes the plea agreement between Carrie L.
Tolstedt ("defendant") and the United States Attorneys' Offices for
the Central District of California and the Western District of North
Carolina (collectively, the "USAO") in the investigation of criminal
conduct pertaining to defendant's role as head of the Community Bank
at Wells Fargo Bank, N.A.  This agreement is limited to the USAO and

cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.[1]

RULE 11(c)(1)(C) AGREEMENT

2.   Defendant understands that this agreement is entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Accordingly, defendant understands that, if the Court determines that it will not accept this agreement, absent a breach of this agreement by defendant prior to that determination and whether or not defendant elects to withdraw any guilty plea entered pursuant to this agreement, this agreement will, with the exception of paragraph 22 below, be rendered null and void and both defendant and the USAO will be relieved of their obligations under this agreement.  Defendant agrees, however, that if defendant breaches this agreement prior to the Court's determination whether or not to accept this agreement, the breach provisions of this agreement, paragraphs 25 and 26 below, will control, with the result that defendant will not be able to withdraw any guilty plea entered pursuant to this agreement, the USAO will be relieved of all of its obligations under this agreement, and the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty plea.

DEFENDANT'S OBLIGATIONS

3.   Defendant agrees to:

---

[1] The United States Attorney's Office for the Northern District of California (NDCA) is recused from this matter.  NDCA prosecutors who participate in this matter do so only pursuant to authorization from the General Counsel, Executive Office for the United States Attorneys, and at the discretion and under the direction of the United States Attorney's Office for the Central District of California.

1          a.   Give up the right to indictment by a grand jury and,
2    at the earliest opportunity requested by the USAO and provided by the
3    Court, appear and plead guilty to a one-count information in the form
4    attached to this agreement as Exhibit A or a substantially similar
5    form, which charges defendant with obstruction of a bank examination,
6    in violation of 18 U.S.C. § 1517.

7          b.   Not contest facts agreed to in this agreement.

8          c.   Abide by all agreements regarding sentencing contained
9    in this agreement and affirmatively recommend to the Court that it
10   impose sentence consistent with paragraph 14 of this agreement.

11         d.   Appear for all court appearances, surrender as ordered
12   for service of sentence, obey all conditions of any bond, and obey
13   any other ongoing court order in this matter.

14         e.   Not commit any crime; however, offenses that would be
15   excluded for sentencing purposes under United States Sentencing
16   Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not
17   within the scope of this agreement.

18         f.   Be truthful at all times with the United States
19   Probation and Pretrial Services Office and the Court.

20         g.   Pay the applicable special assessment at or before the
21   time of sentencing unless defendant has demonstrated a lack of
22   ability to pay such assessments.

23                          THE USAO'S OBLIGATIONS

24   4.   The USAO agrees to:

25         a.   Not contest facts agreed to in this agreement.

26         b.   Abide by all agreements regarding sentencing contained
27   in this agreement and affirmatively recommend to the Court that it
28   impose sentence consistent with paragraph 14 of this agreement.

                                      3

1    c. Except for criminal tax violations (including

2 conspiracy to commit such violations chargeable under 18 U.S.C.

3 § 371), not further criminally prosecute defendant for violations

4 arising from her conduct in her roles at Wells Fargo Bank, N.A., and

5 related companies.  Defendant understands that the USAO is free to

6 criminally prosecute defendant for any other unlawful past conduct or

7 any unlawful conduct that occurs after the date of this agreement.

8 Defendant agrees that at the time of sentencing the Court may

9 consider any uncharged conduct in determining the sentence to be

10 imposed after consideration of all relevant factors under 18 U.S.C.

11 § 3553(a).

## NATURE OF THE OFFENSE

13  5. Defendant understands that for defendant to be guilty of

14 the crime charged in the sole count of the information, that is,

15 obstruction of a bank examination, in violation of 18 U.S.C. § 1517,

16 the following must be true: (1) defendant obstructed an examination

17 of a financial institution by an agency of the United States; (2) the

18 agency of the United States had jurisdiction to conduct the

19 examination; and (3) defendant acted corruptly.

## PENALTIES

21  6. Defendant understands that the statutory maximum sentence

22 that the Court can impose for obstruction of a bank examination, in

23 violation of 18 U.S.C. § 1517, is: five years' imprisonment; a three-

24 year period of supervised release; a fine of $250,000 or twice the

25 gross gain or gross loss resulting from the offense, whichever is

26 greatest; and a mandatory special assessment of $100.

27  7. Defendant understands that supervised release is a period

28 of time following imprisonment during which defendant will be subject

to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.    Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay

removal, removal is presumptively mandatory and a virtual certainty
in this case.  Defendant further understands that removal and
immigration consequences are the subject of a separate proceeding and
that no one, including her attorney or the Court, can predict to an
absolute certainty the effect of her conviction on her immigration
status.  Defendant nevertheless affirms that she wants to plead
guilty regardless of any immigration consequences that her plea may
entail, even if the consequence is automatic removal from the United
States.

FACTUAL BASIS

10.  Defendant admits that defendant is, in fact, guilty of the
offense to which defendant is agreeing to plead guilty.  Defendant
and the USAO agree to the statement of facts provided below and agree
that this statement of facts is sufficient to support a plea of
guilty to the charge described in this agreement and to establish the
Sentencing Guidelines factors set forth in paragraph 12 below but is
not meant to be a complete recitation of all facts relevant to the
underlying criminal conduct or all facts known to either party that
relate to that conduct.

Background

Wells Fargo & Company ("Wells Fargo") was a publicly traded
financial services corporation that wholly owned Wells Fargo Bank,
N.A. (the "Bank"), which was a national banking association.  The
deposits of the Bank were insured by the Federal Deposit Insurance
Corporation.

Wells Fargo's consumer and small business retail banking
business was operated by the Community Banking Division of Wells
Fargo, which was also known as the Community Bank. The Community Bank

was responsible for managing many of the products sold to individual customers and small businesses, including checking and savings accounts, CDs, debit cards, bill pay, and global remittance products.

From approximately 2007 to September 2016, defendant was Senior Executive Vice President of Community Banking and was in charge of the Community Bank.  All employees within the Community Bank ultimately reported to defendant.

Sales Practices Misconduct

Within Wells Fargo, problematic sales practices were at times referred to as "gaming," and included employees' manipulation and/or misrepresentation of sales to meet sales goals, receive incentive compensation, or avoid negative employment consequences, such as reprimands or termination.  Gaming strategies varied widely and included, in some instances, using existing customers' personal identifying information -- without the customers' consent -- to open accounts.  Employees also persuaded customers to open accounts and financial products that the customers authorized but which the employees knew the customers did not actually need or intend to use. This included opening accounts for friends and family members and encouraging customers to open unnecessary or duplicate checking or savings accounts or credit or debit cards.  Millions of secondary accounts and products were opened from 2002 to 2016, and many of these were never used by customers.

Between 2011 and 2016, the Bank referred more than 23,000 employees for sales practices investigation and terminated over 5,300 employees for customer-facing sales ethics violations, including, in many cases, for falsifying bank records.  Thousands of additional employees received disciplinary action short of termination or

1  resigned prior to the conclusion of the Company's investigations into

2  their sales practices.

3  <u>Defendant</u>

4       By no later than 2004, defendant was aware of sales practices

5  misconduct within the Community Bank and aware of the fact that

6  employees were terminated each year for gaming.  Beginning no later

7  than 2006, defendant began receiving information from corporate

8  investigations concerning gaming.  Over time, defendant was informed

9  that terminations for gaming in the Community Bank were consistently

10  increasing over time, that the misconduct was linked in part to sales

11  goals within the Community Bank, and that termination numbers likely

12  underestimated the scope of the problem.

13       In October 2013 and December 2013, the <u>Los Angeles Times</u>

14  published news articles reporting on sales practices problems and

15  misconduct at Wells Fargo in Southern California, including the

16  opening of accounts or financial products managed by the Community

17  Bank that were unauthorized or fraudulent.  These articles increased

18  the attention Wells Fargo paid to sales practices misconduct,

19  including within the Community Bank.  By no later than April 2015,

20  defendant knew that an average of at least 1,000 to 1,200 employees a

21  year were terminated, or resigned pending investigation, for sales

22  practices misconduct.  By no later than May 2015, defendant also knew

23  that, although the Community Bank had created the Sales and Service

24  Conduct Oversight Team ("SSCOT") for, among other reasons, the

25  purported purpose of proactively identifying sales misconduct, SSCOT

26  employed proactive monitoring thresholds to identify for

27  investigation employees with the most egregious metrics, which meant

28  that only a small portion of activity considered a "red flag" for

1  sales practices misconduct was investigated.  In fact, as of July
2  2014, the thresholds established by SSCOT meant that only the top .01
3  to .05 percent of employees engaging in activity considered a "red
4  flag" for sales practices misconduct were investigated by SSCOT.
5  <u>OCC Examination</u>
6       In May 2015, defendant and others participated in the
7  preparation of written materials for a meeting of the Risk Committee
8  of Wells Fargo's Board of Directors (the "May 2015 Memo").  Defendant
9  knew that the May 2015 Memo would be provided to the Office of the
10 Comptroller Currency ("OCC"), an agency of the United States, in the
11 course of its examination of the Community Bank.  Defendant corruptly
12 obstructed the OCC's examination by seeking to minimize the scope of
13 the sales practices misconduct issue reflected in the May 2015 Memo.
14 In particular, notwithstanding the information defendant knew as
15 described above, the May 2015 Memo failed to disclose: (1) statistics
16 on the number of employees who were terminated or resigned pending
17 investigation for sales practices misconduct; and (2) that only a
18 very small percentage of employees who engaged in activity that
19 constituted potential sales practices misconduct was investigated
20 under SSCOT's proactive monitoring standard, as described above.
21            SENTENCING FACTORS AND AGREED-UPON SENTENCE
22       11.  Defendant understands that in determining defendant's
23 sentence the Court is required to calculate the applicable Sentencing
24 Guidelines range and to consider that range, possible departures
25 under the Sentencing Guidelines, and the other sentencing factors set
26 forth in 18 U.S.C. § 3553(a).  Defendant understands that the
27 Sentencing Guidelines are advisory only.
28

12.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 14 | USSG § 2J1.2(a) |
| Acceptance of Responsibility: | -2 | USSG § 3E1.1 |
| Total Offense Level: | 12 | |
| Criminal History Category: | I | |
| Guideline Range: | 10-16 months' imprisonment | |

13.   The parties agree not to argue that any other specific offense characteristics, adjustments, or departures be imposed.

14.   Defendant and the USAO agree that, taking into account the factors listed in 18 U.S.C. § 3553(a)(1)-(7) and the relevant sentencing guideline factors set forth above, an appropriate disposition of this case is that the Court impose a sentence no higher than 16 months' imprisonment; up to three years' supervised release with conditions to be fixed by the Court; a fine of $100,000; and a $100 special assessment.

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF VENUE</u>

16.   Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offense to which defendant is pleading guilty, to the extent the offense to which defendant is pleading guilty were committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offense to which defendant is pleading guilty were committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offense to which defendant is pleading guilty.

11

1

## WAIVER OF STATUTE OF LIMITATIONS

2    17.   Having been fully advised by defendant's attorney regarding

3    application of the statute of limitations to the offense to which

4    defendant is pleading guilty, and in addition to the tolling

5    agreements previously entered between defendant and the USAO,

6    defendant hereby knowingly, voluntarily, and intelligently waives,

7    relinquishes, and gives up: (a) any right that defendant might have

8    not to be prosecuted for the offense to which defendant is pleading

9    guilty  because of the expiration of the statute of limitations for

10   that offense prior to the filing of the information alleging that

11   offense; and (b) any defense, claim, or argument defendant could

12   raise or assert that prosecution of the offense to which defendant is

13   pleading guilty is barred by the expiration of the applicable statute

14   of limitations, pre-indictment delay, or any speedy trial violation.

15

## LIMITED WAIVER OF DISCOVERY

16   18.   In exchange for the government's obligations under this

17   agreement, defendant gives up any right she may have had to review

18   any additional discovery beyond that which has already been provided

19   to her.

20

## WAIVER OF APPEAL OF CONVICTION

21   19.   Defendant understands that, with the exception of an appeal

22   based on a claim that defendant's guilty plea was involuntary, by

23   pleading guilty defendant is waiving and giving up any right to

24   appeal defendant's conviction on the offense to which defendant is

25   pleading guilty.  Defendant understands that this waiver includes,

26   but is not limited to, arguments that the statute to which defendant

27   is pleading guilty is unconstitutional, and any and all claims that

28

the statement of facts provided herein is insufficient to support defendant's plea of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

20.  Defendant agrees that, provided the Court imposes a sentence consistent with paragraph 14 above, defendant gives up the right to appeal any portion of that sentence, and the procedures and calculations used to determine and impose any portion of that sentence.

21.  The USAO agrees that, provided the Court imposes a sentence consistent with paragraph 14 above, the USAO gives up its right to appeal any portion of that sentence, and the procedures and calculations used to determine and impose any portion of that sentence.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

22.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent

that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

23.  Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

24.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

25.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, (b) the USAO will be relieved of all its obligations under this agreement, and (c) the Court's failure to follow any recommendation or request regarding sentence set forth in this agreement will not provide a basis for defendant to withdraw defendant's guilty plea.

26. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

27. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept it. Defendant understands that the

15

Court will determine the facts, sentencing factors, and other considerations relevant to sentencing and will decide for itself whether to accept and agree to be bound by this agreement.

28.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations and sentence referenced in paragraphs 12 and 14 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

<u>NO ADDITIONAL AGREEMENTS</u>

29.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

1            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2      30.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
  FOR THE CENTRAL DISTRICT OF
7 CALIFORNIA

8 JOSEPH T. MCNALLY
  Attorney for the United States
9 Acting Under Authority Conferred
  by 28 U.S.C. § 515

10

11 _____    March 11, 2023
  ALEXANDER B. SCHWAB             Date
12 Assistant United States Attorney

13

14 DENA J. KING
  United States Attorney
15 Western District of North Carolina

16 _____    March 11, 2023
17 DANIEL RYAN                 Date
  Assistant United States Attorney

18

19

20 _____    March 10, 2023
  CARRIE L. TOLSTEDT          Date
21 Defendant

22 _____    3/10/23
23 ENU MAINIGI                 Date
  Attorney for Defendant
24 CARRIE L. TOLSTEDT

25

26 //

27 //

28

                    17

1          CERTIFICATION OF DEFENDANT

2          I have read this agreement in its entirety.  I have had enough

3   time to review and consider this agreement, and I have carefully and

4   thoroughly discussed every part of it with my attorney.  I understand

5   the terms of this agreement, and I voluntarily agree to those terms.

6   I have discussed the evidence with my attorney, and my attorney has

7   advised me of my rights, of possible pretrial motions that might be

8   filed, of possible defenses that might be asserted either prior to or

9   at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charge and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19  _____          March 10, 2023
                                              _____
20  CARRIE L. TOLSTEDT                        Date
    Defendant

21

22          CERTIFICATION OF DEFENDANT'S ATTORNEY

23          I am Carrie L. Tolstedt's attorney.  I have carefully and

24  thoroughly discussed every part of this agreement with my client.

25  Further, I have fully advised my client of her rights, of possible

26  pretrial motions that might be filed, of possible defenses that might

27  be asserted either prior to or at trial, of the sentencing factors

28  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

18

provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is informed and voluntary; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____          3/11/23
ENU MAINIGI                               Date
Attorney for Defendant
CARRIE L. TOLSTEDT

19

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. |
|       Plaintiff, | I N F O R M A T I O N |
|       v. | [18 U.S.C. § 1517: Obstruction of a Bank Examination] |
| CARRIE L. TOLSTEDT, | |
|       Defendant. | |

The Attorney for the United States charges:

[18 U.S.C. § 1517]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.  Wells Fargo Bank, N.A. ("Wells Fargo"), was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation.

2.  The Office of the Comptroller of the Currency ("OCC") was an agency of the United States with jurisdiction to conduct examinations of financial institutions.

B.  OBSTRUCTION OF BANK EXAMINATION

3.  Beginning no later than in or about February 2015 and continuing through at least May 2015, defendant CARRIE L. TOLSTEDT

corruptly obstructed an examination of Wells Fargo Bank by the OCC by causing a memorandum that was provided to the OCC to be materially misleading and incomplete.

JOSEPH T. MCNALLY
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515


MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

ALEXANDER B. SCHWAB
CAROLYN S. SMALL
Assistant United States Attorneys
Major Frauds Section